# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

MALENA MEADOWS et al.,

          Plaintiffs,

v.                                             CIVIL ACTION NO. 2:15-cv-13370

AM & GH LLC,

          Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion for Damages, (ECF No. 34), Motion for Attorney Fees and Costs, (ECF No. 35), and Defendant's two motions to extend the case six months, (ECF Nos. 33 & 36). For the reasons discussed below, the Court **GRANTS** Plaintiffs' motions for damages and attorney's fees and costs and **DENIES** Defendant's motions to extend the case.

## I.  BACKGROUND

Plaintiffs filed their Complaint against Defendant AM & GH LLC on September 22, 2015, alleging breaches of the Fair Labor Standards Act ("FLSA"). Plaintiffs, former employees of Defendant AM & GH LLC, allege that Defendant did not pay them minimum wage or overtime wages as required by the FLSA and West Virginia state law. Defendant initially had counsel, but on March 9, 2016, its counsel filed a motion to withdraw from the case, which the Court granted on March 18, 2016. The Court also directed Defendant to obtain new counsel within thirty days of the entry of that order. Defendant failed to obtain counsel within that timeframe, and on July 11,

2016, the Court entered another order directing Defendant to obtain counsel by July 25, 2016, and to show good cause for its failure to comply with the prior order. The Court also warned Defendant that a failure to comply with this order could result in a variety of sanctions, including default judgment. Defendant again failed to obtain counsel, and on July 29, 2016 the Court entered another order directing Defendant to obtain counsel by August 15, 2016, again warning Defendant about default judgment. On August 25, 2016, the Court granted Defendant a final extension, giving it until September 15, 2016, to obtain counsel. Defendant refused obtained counsel in violation of the Court's orders. Accordingly, the Court granted default judgment in favor of the Plaintiffs on November 9, 2017.

In the Court's order granting default judgment, the Court directed Plaintiffs to file with the Court a memorandum and supporting affidavit or other materials evidencing the precise amount of monetary relief they seek by December 11, 2017. (*See* ECF No. 32.) Plaintiffs timely filed their memorandum in support of damages with the Court. (ECF No. 34.) On the same day, Plaintiffs additionally filed a motion for attorney's fees and costs. (ECF No. 35.) To this date, Defendant has failed to respond to either filing by Plaintiffs except to ask for a six-month delay in "hop[es] the plaintiffs realize and go back to their consciousness." (ECF No. 36.) As such, the Court will consider the motions as unopposed.

## II. STATUTORY DAMAGES

If after being properly served under Rule 4, a party "fails to plead or otherwise defend," then that party is in default and subject to all of the averments in the complaint being deemed admitted. *See* Fed. R. Civ. P. 55(a); Fed R. Civ. P. 8(d); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("the defendant, by his default, admits plaintiff's well-pleaded

allegations of fact") (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citations omitted)). However, "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Fed. R. Civ. P. 54(c). The district court *may* conduct a hearing to determine the amount of damages pursuant to Rule 55(b)(2), but it can also award damages without a hearing where the amount claimed is "capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). The Court may award damages based on affidavits and documentary evidence. *Masco Corp. v. Bennett*, No. 3:08-cv-161-RJC-DCK, 2010 WL 1405136, at *2 (W.D.N.C. Mar. 31, 2010); *see also* Fed. R. Civ. P. 55(b)(2) (providing that a court may hold a hearing before entering default judgment as necessary to "conduct an accounting," "determine the amount of damages," "establish the truth of any allegation by evidence," or "investigate any other matter"). This Court is afforded a significant amount of discretion in determining the need for a hearing on damages. *Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and give judgment accordingly."). The Court finds that the damages in this case are capable of mathematical calculation, and therefore a hearing is unnecessary.

The FLSA, 29 U.S.C. §§ 201-219 (2012), sets a federal minimum wage and maximum forty-hour workweek for all employees covered under the act, and it requires covered employers to pay their employees time and one-half their "regular rate" for all hours worked in excess of forty each week. 29 U.S.C. §§ 206, 207. However, States are free to set their own minimum wage, as long as it is not lower than that of the federal minimum wage, as West Virginia has chosen to do.

3

*Id*. § 218; W. Va. Code § 21-5C-2. Under the FLSA, "[a]ny employer who violates the provisions of section 6 or section 7 of this Act [29 USCS § 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). When a default judgment has been awarded, a plaintiff must prove these damages to a reasonable certainty and when a defendant has failed to respond, the Court must make an independent determination—by relying on affidavits, documentation, or an evidentiary hearing—of the sum to be awarded as damages. *Ventura v. L. A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 104 (D.C.C. 2015.)

In support of their request for damages, Plaintiffs have submitted to the Court detailed worksheets outlining the days and hours worked as well as the amounts due to them for the hours that were worked. (*See* ECF No. 34-2.) Additionally, signed affidavits by each plaintiff accompany each worksheet. (*See* ECF Nos. 34-2, 37.) Lastly, Plaintiffs have submitted copies of checks that were paid to them by Defendant after Plaintiffs confronted Defendant about its failure to provide payment for their work. (*See* ECF Nos. 34-1, -3.) Plaintiffs have submitted to the Court that the following is due to each plaintiff:

    Ms. Adkins:        Regular Hours - $11,892.90;  Overtime Hours - $3,225.60

    Ms. Smith:         Regular Hours - $6,310.40;   Overtime Hours - $ 1,513.80

    Ms. Meadows:     Regular Hours - $1,392.00;   Overtime Hours - $1,044.00

    Ms. Abshire:       Regular Hours - $11,646.40;  Overtime Hours - $8,804.40

(*See* ECF Nos. 34 at 4; 34-2.) Plaintiffs have submitted to the Court that Defendant has made the following payments to each plaintiff:

    Ms. Adkins:         $515.21

    Ms. Smith:          $300.00

    Ms. Meadows:     $100.00

    Ms. Abshire:       $1,310.50

(*See* ECF Nos. 34 at 4; 34-3.) Upon these submissions, the Court finds that Plaintiffs are due the following in unpaid minimum wages and unpaid overtime compensation:

    Ms. Adkins:         $14,603.29

    Ms. Smith:          $7,524.20

    Ms. Meadows:     $2,336.00

    Ms. Abshire:       $19,140.30

The Court finds the affidavits and documentary evidence submitted by Plaintiffs prove the amounts due with reasonable certainty based on the extensive detail provided in the calculations and the evidence of Defendant's payments to Plaintiffs. Defendant's lack of consistent wage payment to Plaintiffs and random payments following complaints are corroborated by Defendant's statements during the deposition. (*See* ECF No. 34-1.) The Court also finds these calculations to be reasonable. Furthermore, the Court looks askance at Defendant's repeated failure to follow the Court's orders and Defendant's lack of response to the submissions by Plaintiffs. However, the Court will not order liquidated damages in this case.

The FLSA states that any employer found in violation of Section 6 or 7 of the FLSA "*shall* be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be . . . ." 29 U.S.C. § 216(b) (emphasis added). As this Court has found with reasonable certainty the amounts due to each Plaintiff and

finds the amounts to be reasonable, the Court **GRANTS** Plaintiff's motion for damages and, as required by the FLSA, **ORDERS** the following damages to be paid to each Plaintiff: Ms. Adkins - $14,603.29; Ms. Smith - $7,524.20; Ms. Meadows - $2,336.00; and Ms. Abshire - $19,140.30.

### III. ATTORNEY'S FEES & COSTS

In addition to statutory damages, Plaintiffs also request attorney's fees in the amount of $7,612.50 and costs of $1,301.38. While the American Rule generally prohibits the recovery of attorney's fees in federal court, *see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 241 (1975), various exceptions to the rule exist. One exception is 29 U.S.C. § 216(b), which applies to FLSA actions and allows prevailing parties to seek attorney's fees. *See also Randolph v. Powercomm Constr., Inc.*, 715 F. App'x 227, 230 (4th Cir. 2017). Under this statute, "the court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). These fee-shifting statutory schemes ensure that legal remedies are available to "vindicate the economic or social rights of individuals who might not otherwise be able to afford the costs of litigation." *See Koontz v. Wells Fargo N.A.*, No. 2:10–cv–00864, 2013 WL 1337260, at *5 (S.D. W. Va. Mar. 29, 2013). The Fourth Circuit has outlined a three-step process for determining reasonable attorney's fees. *Randolph*, 715 F. App'x at 230.

> First, "the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." [*McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)] (internal quotation marks omitted). "To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)." *McAfee*, 738 F.3d at 88. Second, "the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id*. (internal quotation marks omitted). When "all claims involve a common core of facts much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."

6

> *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998) (alterations, ellipsis, and internal quotation marks omitted)). Third, "the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (internal quotation marks omitted).

*Id*. The Supreme Court has noted that "the most critical factor" in calculating reasonable fees "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In this case, Plaintiffs secured a default judgment in their favor. Plaintiffs' attorneys could not have been any more successful. Thus, there is no need for this Court to reduce Plaintiffs' attorney's fees based on the second and third step because they prevailed on all their claims and the "product of hours . . . expended on the litigation as a whole times a reasonably hourly rate" would not be "an excessive amount." *Id.* (discussing how a party's attorneys' fees may be reduced if it achieves only partial or limited success). Accordingly, the Court will make its award decision solely upon the lodestar figure.

In *Hensley*, 461 U.S. at 424, the Supreme Court synthesized two earlier approaches to awarding fees under the lodestar method. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir. 1973). The Court stated the following in *Hensley*:

> [T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation is inadequate, the district court may reduce the award accordingly.

461 U.S. at 433. This approach reflects the Third Circuit's decision in *Lindy*, but the Court also explicitly approved the use of the following twelve factors set out by the Fifth Circuit in *Johnson* to establish the hours and the rate: (1) time and labor required; (2) novelty and difficulty of the

7

issues; (3) skill required to properly perform the legal service; (4) preclusion of other employment due to the attorney's acceptance of the case; (5) customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorney; (10) "undesirability" of the case; (11) nature and length of attorney's professional relationship with client; and (12) awards in similar cases. *See* 488 F.2d at 717–19.

Before calculating the number of compensable hours, the Court must proceed toward assigning a proper rate to those hours. *See Wolfe v. Green*, No. 2:08–cv–01023, 2010 WL 3809857, at *4 (S.D. W. Va. Sept. 24, 2010) (describing this endeavor as "the critical inquiry" (quoting *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 289 (4th Cir. 2010))). The prevailing party has the burden of producing "satisfactory evidence" that the requested rates are similar to the prevailing market rate in the forum's community, *see Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994), which reflects "similar services by lawyers of reasonably comparable skill, experience and reputation." *See Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984); *see also Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). It is typically established by affidavits of counsel with similar experience as to what they would charge for a similar case, amounts awarded to counsel with similar experience in similar litigation, and amounts awarded to counsel for his services in prior litigation. *See Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 228 (4th Cir. 2009); *see also Brewer v. Protexall, Inc.*, 50 F.3d 453, 459 (7th Cir. 1995). The Court may also consider counsel's experience and expertise, *see Blum*, 465 U.S. at 899 n.15; *Johnson*, 488 F.2d at 718; *see also Buffington v. Baltimore Cty.*, 913 F.2d 113, 130 (4th Cir. 1990), *cert. denied*,

499 U.S. 906 (1991), and his or her status as partner or associate, *see, e.g.*, *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990).

In furtherance of establishing appropriate fees, the movant bears the burden of establishing the hours claimed through adequate documentation. *See Hensley*, 461 U.S. at 437 ("The applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."). Counsel's fee request "should, at a minimum, (1) provide dates work was performed, (2) a reasonable, specific description of the work, and (3) time expended on the work." *Central Cab Co., Inc. v. Cline*, 972 F. Supp. 370, 374 (S.D. W. Va. 1997). The movant must also demonstrate that the claimed hours were "reasonably" expended. *Hensley*, 461 U.S. at 433–34; *see also Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1359 (4th Cir. 1995); *Broyles v. Director*, 974 F.2d 508, 513 (4th Cir. 1992). The Court may make reductions for unreasonably expended hours either by conducting an hour-by-hour review or making a percentage reduction if the evidence is voluminous and such a review would be impractical or inadequate. *See, e.g.*, *Shore v. Fed. Express Corp.*, 42 F.3d 373, 381 (6th Cir. 1994); *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). While no definitive rules exist to aid the Court in determining reasonable hours, the *Hensley* Court noted that excessive hours, redundant hours, and unnecessary hours are not compensable. *See* 461 U.S. at 434.

Here, Plaintiffs request a fees and costs award of $8,913.88 based on the following:

| | | |
|---|---|---|
| Attorney J. Michael Ranson | 21.75 hours/$350 per hour | $7,612.50 |
| Costs | | $1,301.38 |
| **Total** | | $8,913.88 |

(ECF No. 35 at 2.)

9

*A. Reasonable Hourly Rates*

Based on the applicable law explained above, the Court will determine the lodestar figure by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. The Court is guided by the *Johnson* factors in determining the reasonableness of the time expended and the hourly rate charged. The following four factors are "particularly relevant" in determining reasonable hourly rates: (1) the customary fee for like work; (2) the experience, reputation, and ability of the attorneys; (3) attorneys' fees awards in similar cases; and (4) the amount in controversy and the results obtained. *See Koontz*, 2013 WL 1337260, at *13 (quoting *Wolfe*, 2010 WL 3809857, at *5). Each of the four factors will be considered in turn. Furthermore, the Court once again notes that Defendant has not filed a response to Plaintiffs' request and therefore does not dispute the customary local fee, supporting evidence of Plaintiffs' positions including Plaintiffs' counsel's reputation, or Plaintiffs' request in general.

1. Customary Fees for Similar Work

This factor considers the customary fee "for similar work in the community." *Johnson*, 488 F.2d at 718. The fee movant bears the burden of "produc[ing] satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Westmoreland Coal Co.*, 602 F.3d at 289 (quoting *Plyler*, 902 F.2d at 277 (internal citations and quotation marks omitted)).

Moving counsel provided the Court with affidavits from peer attorneys Walt Auvil, Kay Bayless, and Kevin L. Carr, stating that the requested hourly rates would be the prevailing market rates in the Charleston, West Virginia, area. (*See* ECF No. 35-4 at 2, 4, 6 (describing the requested hourly rates as what "one would expect to pay for someone of Mr. Ranson's

experience").) These attorneys, who provide that they have represented clients in employment and labor disputes, (ECF No. 35-4 at 1, 3, 5), and have maintained long residency in West Virginia and have practiced law in the community, (ECF No. 35-4 at 2, 4, 6), are prominent local attorneys with many years of experience,[1] and their affidavits support Plaintiff's proposed hourly rates as reasonable and in accordance with the prevailing market rate for this area.

    2. <u>Experience, Reputation, and Ability of the Attorneys</u>

Mr. Ranson is a 1982 graduate of West Virginia University College of Law and has been in private practice ever since. He is also a member of the following professional organizations: West Virginia Association for Justice, American Association for Justice, American Bar Association, West Virginia State Bar, and Kanawha County Bar Association. Each affiant attests to the experience, reputation, and ability of Plaintiffs' attorney in their affidavits. The affiants note their familiarity with the lawyers in the community who practice in employment law and state that they consider themselves to have "specific knowledge and acumen regarding their level of performance and achievements." (ECF No. 35-4 at 1, 3, 5.) These statements speak to Mr. Ranson's reputation and ability as he and the affiants each have considerable experience in the area of employment law and thus considerable experience with each other. The affiants additionally provide that they have "specific knowledge" of Mr. Ranson "and his long tenure as a practicing attorney" in West Virginia "and his focus on the successful representation of clients in complex employment- and labor-related litigation." (*Id*.) The affiants' positions reflect the *Johnson*

---

[1] Mr. Auvil is an attorney with over thirty-six years of experience and is the owner of the Employment Law Center, PLLC in Parkersburg, WV. (ECF No. 35-4 at 1.) Ms. Bayless has been a member of the West Virginia Bar for almost forty years and is the founder and principal attorney at the Bayless Law Firm, PLLC, a Princeton, WV law firm. (ECF No. 35-4 at 3.) Mr. Carr, a member of Spillman Thomas & Battle at the Charleston, WV office, is the Co-Chair of the Labor and Employment Practice Group and has practiced law in West Virginia for twenty-three years. (ECF No. 35-4 at 5.)

Court's pronouncement that, typically, "fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation." *See* 455 F.2d at 718–19.

    3. Fees Awards in Similar Cases

Of the four *Johnson* factors considered in determining a reasonable hourly rate, Plaintiffs' motion and supporting evidence is most deficient with respect to this factor. Plaintiffs' counsel and the affiants tender evidence regarding their significant amount of experience in the area of employment and labor disputes as well as their awareness of the duties and responsibilities required to be successful in this area, but fail to provide actual examples of fees awarded in similar cases. (*See* ECF No. 35-4.) However, the Court notes that the considerable experience of Plaintiffs' counsel and the affiants' practice does weigh favorably as these attorneys have first-hand knowledge of similar cases which helps to bridge the gap from the absence, though it does not make up for the failure to provide actual examples. Furthermore, the other factors this Court has taken into consideration drastically make up for Plaintiffs' lack of actual fees awarded in similar cases. Lastly, the Court once again notes that Defendant has failed to challenge Plaintiffs' positions regarding their request, including this deficiency.

    4. Amount in Controversy and Results Obtained

In the Complaint, Plaintiffs sought "a) Judgment against the Defendant for an amount equal to loss of all wages, plus interest; b) Liquidated damages; c) Attorney fees and costs; and d) Such further equitable and legal relief as this Court deems just and proper." (*See* ECF No. 1 at 5.) The Court notes that the economic consequences of Defendant's actions were substantial; Defendant's failure to pay Plaintiffs minimum wage and overtime wages essentially robbed Plaintiffs of their livelihood. Without the filing of the above-styled action or a similar one,

Plaintiffs and others would have suffered in the short and long run. Plaintiffs' success in this lawsuit undoubtedly ended a large monetary loss for Plaintiffs as well as other similarly situated employees. Plaintiffs have stated that as a result of the litigation, Defendant is now paying its employees as required by law. (ECF No. 35 at 5.) For this reason, the Court finds that the amount in controversy was significant. Due to the strong advocacy of Plaintiffs' counsel, the results obtained were exactly what Plaintiffs sought. Therefore, this "most critical factor" weighs heavily in Plaintiffs' favor. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

    5. <u>Reasonable Hourly Rate Findings</u>

Based on Plaintiffs' evidence and briefing, the lack of opposition from Defendant, and the Court's familiarity with this litigation and the local legal market, the Court makes the following findings:

The Court **FINDS** that the proposed hourly rates for Mr. Ranson are reasonable. This finding takes into consideration the following: similar fees charged by the peer attorney affiants; Mr. Ranson's education, experience, and reputation as supported by the peer attorneys' affidavits; and what was at stake for Plaintiffs and the high level of success Mr. Ranson achieved to secure his clients' relief. Therefore, Mr. Ranson will be awarded an hourly rate at the proposed $350.

    B.    *Reasonable Number of Hours Worked*

In *Koontz*, this Court noted the following standard in determining the reasonable number of hours worked:

> Plaintiff bears the burden of proving that the number of hours her counsel worked is reasonable. "When plaintiff prevails on only some of the claims made, the number of hours may be adjusted downward; but where full relief is obtained, the plaintiff's attorney should receive 'a fully compensatory fee,' and in cases of exceptional success, even an enhancement." *Hensley v. Eckerhart*, 461 U.S. at 435. "The number of hours must obviously be adjusted to delete duplicative or unrelated

13

hours. At bottom, the number of hours must be reasonable and must represent the product of 'billing judgment.'" *Id.* at 437.

2013 WL 1337260, at *19. As for the reasonableness of the number of hours, the Court reiterates that an award should reflect only an amount that is reasonable in relation to the results obtained. *See Hensley*, 461 U.S. at 434; *see also Robinson*, 560 F.3d at 244.

Plaintiffs have submitted detailed billing statements to the Court. (ECF No. 35-1.) The Court finds the hours billed to be reasonable. The bulk are related directly to filing the Complaint; engaging in discovery matters, including reviewing documents, conducting depositions and completing interrogatories; participating in mediation; and communicating with clients. These hours are reasonably expended and reflect the ultimate success that Plaintiffs attained in this suit. *See Hensley*, 461 U.S. at 437; *Martin*, 48 F.3d at 1359. The Court also notes that Plaintiffs' counsel "has not charged for several hours that were in fact incurred and instead is seeking recovery for time spent dealing with the clients or court matters." (ECF No. 35 at 3.)

Accordingly, the Court **FINDS** that Plaintiffs' proposed number of hours are a reasonable number of attorney hours and therefore accepts Plaintiffs' proposal.

In sum, the Court's lodestar **FINDINGS** are:

| | | |
|---|---|---|
| Attorney J. Michael Ranson | 21.75 hours/$350 per hour | $7,612.50 |
| Costs | | $1,301.38 |
| **Total** | | **$8,913.88** |

Additionally, Plaintiffs claim $1,301.38 in costs. Based on Plaintiffs' statements and the exhibits attached to the motion, it appears that these costs contain entries for Quicken, postage, copies, and the expenses incurred by the Law Office of G. Patrick Jacobs LC. (*See* ECF Nos. 35

at 2–3; 35-2; 35-3.) Because the claimed amount of $1,301.38 in expenses is supported and justified and Defendant does not dispute the proposed amount, the Court **FINDS** that Plaintiffs are entitled to an award of $1,301.38 for these expenses.

*IV.     CONCLUSION*

For the foregoing reasons, the Court **ORDERS** monetary damages against the Defendant, AM & GH LLC, in the following amounts to be paid to each Plaintiff: **Heather Adkins - $14,603.29; Leslie Smith - $7,524.20; Malena Meadows - $2,336.00; and Jessica Abshire - $19,140.30**. Furthermore, the Court **ORDERS** Defendant, AM & GH LLC, to pay Plaintiffs **$7,612.50** in attorney's fees and **$1,301.38** in costs for a total award of **$8,913.88**. Lastly, the Court **DENIES** Defendant's requests to delay the case six months as the Court has already given Defendant multiple opportunities to defend itself, yet Defendant has repeatedly disregarded the Court's orders which ultimately resulted in a default judgment being entered against Defendant in addition to the Court's present award of damages and attorney's fees. Defendant has continued to act with disregard for the authority of the Court by filing these motions, which are inappropriate given the status of the case, without counsel as required by the precedent of this Circuit. The Court has lost its patience with Defendant and will not allow this long-drawn-out proceeding to carry on any longer.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER:      August 15, 2018

THOMAS E. JOHNSTON, CHIEF JUDGE